**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GARY J. HALL,                          :
                                       :   Civil Action No. 08-5904(NLH)
              Plaintiff,               :
                                       :
                                       :
              v.                       :   **OPINION**
                                       :
JUEL E. COLE, et al.,                  :
                                       :
              Defendants.              :


**APPEARANCES:**

       GARY J. HALL, Plaintiff <u>pro se</u>
       # 79666
       Burlington County Jail
       P.O. Box 6000
       Mt. Holly, New Jersey 08060

**HILLMAN**, District Judge

       Plaintiff Gary J. Hall ("Hall"),currently a state inmate

confined at the Burlington County Jail in Mount Holly, New

Jersey, seeks to bring this action <u>in forma pauperis</u>, alleging

violations of his constitutional rights under 42 U.S.C. § 1983.

Based on his affidavit of indigence, the Court will grant

plaintiff's application to proceed <u>in forma pauperis</u> pursuant to

28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to

file the Complaint.[1]

_____

       [1] This matter was administratively terminated by Order of
this Court on December 10, 2008, because plaintiff had not paid
the filing fee or submitted a complete application to proceed <u>in</u>
<u>forma pauperis</u> ("IFP"), with his six-month prison account

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I.  BACKGROUND

Hall brings this action, pursuant to 42 U.S.C. § 1983, against the following defendant officials at the Burlington County Jail ("BCJ"): Warden Juel E. Cole; Deputy Warden Cox; Sgt. Hall; Correctional Officer ("CO") Pearlman; Captain MacDonnall; Sgt. Hernandez; Nurse R. Harris; CO D. Barnes; CO Shedeker; Captain Sholtz; CO Minus; Jane Doe, Nurse Practitioner; Dr. John Doe; Sgt. Lieth; Burlington County; and the Burlington County Board of Freeholders.  (Complaint, Caption and ¶¶ 7-21).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

_____

statement as provided by 28 U.S.C. § 1915(a)(2).  The Order allowed plaintiff thirty (30) days to submit a letter request to re-open the case with his complete IFP application, or the filing fee.  On December 16, 2008, plaintiff filed a motion to re-open his case, providing a certified prison account statement.  On January 5, 2009, plaintiff remitted the $350.00 filing fee.  Therefore, this Court will direct the Clerk of the Court to re-open this matter.

Hall alleges that he has been housed in the same cell with another inmate who has an open and infectious wound.  Despite plaintiffs' many requests to all of the defendants that he or the other inmate be moved, no effort was made by defendant to protect plaintiff from exposure to an infectious disease.  Consequently, plaintiff alleges that he contracted skin lesions due to his exposure to his cell mate's open and infectious wound.[2]  (Compl, ¶¶ 22-51).

Hall also alleges that he was denied medical care and treatment for his known medical conditions, which include a history of heart disease and stroke with elevated cholesterol. Hall states that, while he was in the custody of the Florida Department of Corrections, their doctors had prescribed medication for the treatment of plaintiff's conditions.  He also had a prescribed diet.  However, when plaintiff was transferred from Florida to the BCJ, defendants, Dr. John Doe, Nurse Practitioner Doe, Deputy Warden Cox and Warden Cole refused to provide plaintiff with the prescribed medication and medical diet.  (Compl., ¶¶ 52-59).

Next, Hall complains that his confinement in administrative segregation at the BCJ restricts his access to religious

---

[2]  Plaintiff further alleges that the medical staff at BCJ had plaintiff dress and bandage his cell mate's wound, increasing plaintiff's exposure to an infectious disease.  (Compl., ¶¶ 33-35).

services.  Hall admits that he was placed in administrative segregation because he was a witness in a high profile case. (Compl., ¶¶ 60-63).

Hall also alleges that he has been denied access to the courts because his confinement in administrative segregation limits his access to the jail law library.  Hall states that he was unable to research or obtain the assistance of counsel in connection with his pending criminal case in New Jersey.  It appears that plaintiff wishes to be returned to Florida. (Compl., ¶¶ 64-69).

Finally, Hall contends that he is confined to his cell in administrative segregation for 23 hours out of a 24-hour day.  He is permitted only one hour each day to leave his cell, but he must remain in the general housing area.  He claims that this amounts to punitive detention.  (Compl., ¶¶ 70-73).

Hall seeks injunctive relief ordering defendants to provide him access to church services, access to the courts, and to isolate inmates with communicable or infectious diseases.  He also asks for an unspecified amount of monetary damages. (Compl., Prayer for Relief).

II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action

in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  Here, plaintiff is a prisoner who is proceeding in forma pauperis, and he is asserting claims against government prison officials with respect to incidents occurring while he was confined.  Consequently, this action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

5

In short, a pro se prisoner plaintiff simply need comply with the pleading requirements of Rule 8(a)(2)(complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief").  See Erickson, 127 S.Ct. at 2200.  Thus, a complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Erickson, 127 S.Ct. at 2200 (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculation level. ...

Bell v. Atlantic Corp. v. Twombly, 550 U.S. ___, 127 S.Ct. 1955, 1964-65 (2007)(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Accordingly, a pro se prisoner plaintiff may allege only enough factual matter (taken as true) to suggest the required elements of the claim(s) asserted.  Twombly, supra; Phillips v. Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the

6

former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.  ANALYSIS

A.  Conditions of Confinement

Under the Eighth Amendment,[3] prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety.

---

[3]  It appears that Hall is a convicted state prisoner, serving a term pursuant to a Florida state conviction. Therefore, his claims will be analyzed under the Eighth Amendment standard.

8

Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).  However, the Constitution "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981).

The Eighth Amendment prohibits conditions that unnecessarily and wantonly inflict pain, or are grossly disproportionate to the severity of the crime warranting imprisonment.  Rhodes, 452 U.S. at 346-47.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Id. at 346. "[I]t is well settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  To determine whether the conditions of confinement violate the Eighth Amendment, the courts employ a test that includes objective and subjective elements, both of which must be satisfied by the plaintiff. See Counterman v. Warren County Corr. Facility, 176 Fed. App. 234, 238 (3d Cir. 2006) (citing Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001), quoting, in turn, Farmer, 511 U.S. at 842-46).

A prisoner may satisfy the objective element of a conditions-of-confinement claim, that a deprivation be "sufficiently serious," if he can show that the conditions alleged, either "alone or in combination, . . . deprive him of the minimal civilized measure of life's necessities." Rhodes v.

Chapman, 452 U.S. at 347-48.  Such necessities include: "adequate food, clothing, shelter, sanitation, medical care, and personal safety."  Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).

Here, Hall complains that he has been placed in administrative segregation because he is a witness in a high-profile case, but he is confined in his cell for 23 hours every day and is allowed only one free hour in the general housing area.  He does not complain of any other conditions, either "alone or in combination" of other conditions that would show he is being deprived "of the minimal civilized measure of life's necessities."[4]  Rhodes v. Chapman, 452 U.S. at 347-48.  Consequently, this Court finds that these allegations, even if true, do not rise to the level of a federal constitutional deprivation at this time.

Plaintiff's allegations in this regard also may be construed as an Eighth Amendment denial of exercise or recreation claim.  "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'"  Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988)(quoting  Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)); see also Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)("[d]eprivation of

---

[4]  Hall does complain that defendants failed to protect him from harm and exposure to a highly infectious disease.  This allegation may be considered as an extension of a conditions of confinement claim; accordingly, this Court is construing the allegation as a failure to protect claim in violation of plaintiff's Eighth Amendment right against cruel and unusual punishment, which is discussed infra at Section IV.E.

outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation."); Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983); Campbell v. Cauthron, 623 F.2d 503, 506-07 (8th Cir. 1980); Kirby v. Blackledge, 530 F.2d 583, 587 (4th Cir. 1976); Loe v. Wilkinson, 604 F. Supp. 130, 135 (M.D.Pa. 1984).  However, the lack of exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened."  Spain, 600 F.2d at 199.  Thus, a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated.

In order to demonstrate a deprivation of a constitutional right to recreation, Hall also must satisfy the Eighth Amendment standard and show deliberate indifference on the part of prison officials.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Here, it is plain that Hall's recreation time is circumscribed because he is confined in administrative segregation for his safety.  Based on the allegations asserted by Hall in the Complaint, this Court finds no constitutional deprivation at this time.  It would appear that Hall has not been denied recreation time in its entirety, only yard recreation, and this is curtailed while plaintiff is in administrative segregation.  Thus, Hall has not demonstrated deliberate indifference by defendants to

plaintiff's recreational needs.  Prison officials have a legitimate governmental interest in maintaining prison security and the safe operation and administration of recreation for all inmates.  Decisions by prison administrators regarding matters of security, discipline, and the administration and operation of the prison are accorded great deference.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979).  In this case, it appears from plaintiff's own admission that his placement in administrative segregation is due to his status as a witness in a high profile case that may affect his safety in prison.

Additionally, Hall has not alleged any tangible physical harm resulting from the alleged restricted outside recreation. Therefore, this Court finds no impingement on plaintiff's constitutional rights by the limited restriction on outside recreation, especially where plaintiff alleges no tangible physical harm or injury from the alleged denial of yard recreational time.  Plaintiff's claim alleging denial of recreation and/or punitive detention will be dismissed because he fails to state a claim of a cognizable federal constitutional deprivation at this time.

B.  Denial of Medical Care Claim

The Eighth Amendment proscription against cruel and unusual punishment also requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his

right to adequate medical care, an inmate must allege:  (1) a
serious medical need; and (2) behavior on the part of prison
officials that constitutes deliberate indifference to that need.
Estelle, 429 U.S. at 106; Natale v. Camden County Correctional
Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the
inmate must demonstrate that his medical needs are serious.
"Because society does not expect that prisoners will have
unqualified access to health care, deliberate indifference to
medical needs amounts to an Eighth Amendment violation only if
those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9
(1992).  The Third Circuit has defined a serious medical need as:
(1) "one that has been diagnosed by a physician as requiring
treatment;" (2) "one that is so obvious that a lay person would
recognize the necessity for a doctor's attention;" or (3) one for
which "the denial of treatment would result in the unnecessary
and wanton infliction of pain" or "a life-long handicap or
permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d
Cir. 2003)(internal quotations and citations omitted); see also
Monmouth County Correctional Institutional Inmates v. Lanzaro,
834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006
(1988).

The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  See Natale, 318 F.3d at 582 (finding
deliberate indifference requires proof that the official knew of

and disregarded an excessive risk to inmate health or safety).
"Deliberate indifference" is more than mere malpractice or
negligence; it is a state of mind equivalent to reckless
disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S.
825, 837-38 (1994).  Furthermore, a prisoner's subjective
dissatisfaction with his medical care does not in itself indicate
deliberate indifference.  Andrews v. Camden County, 95 F. Supp.2d
217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145
(D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly,
"mere disagreements over medical judgment do not state Eighth
Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir.
1990).  "Courts will disavow any attempt to second-guess the
propriety or adequacy of a particular course of treatment ...
[which] remains a question of sound professional judgment."
Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d
Cir. 1979) (internal quotation and citation omitted).  Even if a
doctor's judgment concerning the proper course of a prisoner's
treatment ultimately is shown to be mistaken, at most what would
be proved is medical malpractice and not an Eighth Amendment
violation.  Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

     The Third Circuit has found deliberate indifference where a
prison official: (1) knows of a prisoner's need for medical
treatment but intentionally refuses to provide it; (2) delays
necessary medical treatment for non-medical reasons; or (3)
prevents a prisoner from receiving needed or recommended
treatment.  See Rouse, 182 F.3d at 197.  The court also has held

that needless suffering resulting from the denial of simple
medical care, which does not serve any penological purpose,
violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See
also Monmouth County Correctional Institutional Inmates, 834 F.2d
at 346 ("deliberate indifference is demonstrated '[w]hen ...
prison authorities prevent an inmate from receiving recommended
treatment for serious medical needs or deny access to a physician
capable of evaluating the need for such treatment"); Durmer v.
O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897
F.2d 103 (3d Cir. 1990).

    Here, Hall alleges that he has been deprived of medical care
and treatment because the defendants have refused to give him his
prescribed medication and diet as recommended by other doctors
while he was confined by the Florida Department of Corrections.
Heart disease, stroke and high cholesterol are often regarded as
serious medical conditions, but whether Hall's allegations of
these conditions demonstrate that he has a serious medical
condition under the objective element of a denial of medical care
claim is a fact question not suitable for sua sponte dismissal at
this early pleading stage.  Thus, this Court must look to the
allegations of deliberate indifference, the subjective element of
a denial of medical care claim, to determine whether this claim
should go forward at this time.

    Hall alleges that he has been prescribed medications and a
special medical diet for treatment of his conditions, but that
the defendants have refused to provide same without regard to

plaintiff's health.  Because Hall alleges that the medical treatment was prescribed by other medical providers, he may be able to show that defendants were deliberately indifferent to plaintiff's medical needs.  Accordingly, this Complaint may be allowed to proceed at this time because Hall alleges facts sufficient, if true, to make out a <u>prima</u> <u>facie</u> claim of deliberate indifference to a serious medical need.

C.  <u>Denial of Access to Religious Services</u>

All prisoners must be afforded reasonable opportunities to exercise the religious freedom guaranteed by the First and Fourteenth Amendment.[5]  <u>Cruz v. Beto</u>, 405 U.S. 319, 322 n.2 (1972).  "The mere assertion of a religious belief does not automatically trigger First Amendment protections, however.  To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection."  <u>DeHart v. Horn</u>, 227 F.3d 47, 51 (3d Cir. 2000). <u>See also</u> <u>Sutton v. Rasheed</u>, 323 F.3d 236, 250-51 (3d Cir. 2003).

To establish a violation of the right to freely exercise religion, an inmate must satisfy the "reasonableness test" set forth in <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987), and <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349 (1987).  The standards

---

[5]  The First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, <u>Cantwell v. Connecticut</u>, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.

delineated in Turner and O'Lone indicate that when a prison
regulation encroaches upon prisoners' rights to free exercise of
their religion, the regulation is valid if it is reasonably
related to a legitimate penological interest.  See Turner, 482
U.S. at 89; O'Lone, 482 U.S. at 349.  Under that standard,
"restrictive prison regulations are permissible if they are
'reasonably related to legitimate penological interests,' and are
not an 'exaggerated response' to such objectives." Beard v.
Banks, 126 S. Ct. 2572, 2578 (2006) (quoting Turner v. Safley,
482 U.S. 78, 87 (1987)). Thus, plaintiff must allege that the
restrictions on his religious practices are not reasonably
related to the prison's legitimate penological interest. See
Robinson v. Ridge, 996 F. Supp. 447, 450 (E.D. Pa. 1997), aff'd,
175 F.3d 1011 (3d Cir. 1999).

The reasonableness standard involves the examination of the
following four factors:  (1) whether the regulation or practice
in question furthers a legitimate governmental interest unrelated
to the suppression of expression; (2) whether there are
alternative means of exercising First Amendment rights that
remain open to prison inmates; (3) whether the right can be
exercised only at the cost of less liberty and safety for guards
and other prisoners; and (4) whether an alternative exists which
would fully accommodate the prisoners' rights at de minimis cost
to valid penological interests. See Thornburgh v. Abbott, 490
U.S. 401, 415-18 (1989); Turner, 482 U.S. at 89-91.

17

However, prison administrators need not choose the least restrictive means possible in trying to further legitimate penological interests.  Thornburgh, 490 U.S. at 411.  Moreover, "[i]f the connection between the regulation and the asserted goal is arbitrary or irrational, [however,] then the regulation fails, irrespective of whether the other factors tilt in its favor." Shaw v. Murphy, 532 U.S. 223, 230-31 (2001).

Here, Hall alleges that defendants have denied him access to religious services because of his status in administrative segregation for his protection as a witness in a high profile case.  This allegation suggests, however, that the jail officials have a legitimate governmental interest, jail security and the protection of plaintiff, in limiting plaintiff's access to religious services attended by the general jail population. Nevertheless, plaintiff may be able to show that defendants have not provided alternative means for plaintiff to practice his religion.  Accordingly, the Court will allow this claim to proceed at this early stage of pleading.

D.   Access to Law Library Claim

Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[6]

---

[6]   The right of access to the courts is an aspect of the First Amendment right to petition.  McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d

The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825.  "'[T]he touchstone ... is meaningful access to the courts.'"  Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(quoting Bounds, 430 U.S. at 823)(internal quotation omitted).

    In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are

---

Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also, Hudson v. Palmer, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).  Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges.  <u>See</u>, <u>e.g.</u>, <u>May v. Sheahan</u>, 226 F.3d 876, 883-84 (7th Cir. 2000); <u>Caldwell v. Hall</u>, 2000 WL 343229 (E.D. Pa. March 31, 2000).  <u>But see</u> <u>United States v. Byrd</u>, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); <u>United States v. Walker</u>, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  <u>See</u> <u>Lewis</u>, 518 U.S. at 348-51, 354-55 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance

facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint."  Lewis, 518 U.S. at 351.

Here, Hall fails to allege any actual injury as a result of the alleged denial of access to the prison law library.  He was able to file this Complaint in a timely manner, and he does not articulate how the restrictions on his use of the law library has hindered his efforts to either pursue this claim, file administrative grievances, or file any motions or prepare his defense in his pending criminal matter in New Jersey.  He seems to imply that the restrictions on use of the library has hindered his efforts to obtain the assistance of counsel.  It is not clear that he has rejected the assistance of court-appointed defense counsel.  Therefore, based on these allegations, Hall's claim alleging denial of access to the law library will be dismissed without prejudice for failure to state a claim at this time.

E.   Failure To Protect

Finally, this Court will consider Hall's claim that defendants failed to protect him from harm through exposure to an infectious disease from plaintiff's cellmate.

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments:  they cannot be 'cruel and unusual.'"  Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  As noted above, the Eighth Amendment prohibits

conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  Id. at 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society."  Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1956)).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to "'contemporary standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  See Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes, 452 U.S. at 345.  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  Hudson, 503 U.S. at 5.

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that

prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837.  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror."  Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).  "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious."  Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm.  Farmer, 511 U.S. at 834.

Here, Hall alleges that defendants housed him in the same cell as an inmate who was suffering from an open wound with a highly infectious disease.  Despite plaintiff's requests to be moved or to have his cell cleaned, defendants continued to keep plaintiff in close contact with an infectious inmate without regard to plaintiff's safety and health.  In fact, Hall alleges that the nurses made plaintiff change his cellmate's bandages, further exposing plaintiff to contact with a highly infectious wound.  Hall eventually contracted infectious lesions from his cellmate.

These allegations, if true, may be sufficient, at this early screening stage, to withstand dismissal because it tends to show

that defendants were informed or should have known about a dangerous condition and plaintiff's continual exposure to a harmful infectious disease, and did nothing to prevent or alleviate plaintiff's exposure to harm.  See Nami, 82 F.3d at 67-68; Farmer, 511 U.S. at 842; accord Hamilton v. Leavy, 117 F.3d 742, 747-48 (3d Cir. 1997); Ingalls v. Florio, 968 F.Supp. 193, 199-200 (D.N.J. 1997).  Accordingly, the Court will allow this failure to protect claim to proceed against defendants at this time.

V.   CONCLUSION

Therefore, for the reasons set forth above, plaintiff's claims asserting denial of recreation, punitive detention, and denial of access to the prison law library, will be dismissed without prejudice, in their entirety as against all defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  However, plaintiff's claims asserting that defendants failed to protect him from exposure to a harmful infectious disease, failed to provide him prescribed medical care and denied him access to religious services, shall be allowed to proceed at this time.  An appropriate order follows.

 s/Noel L. Hillman
NOEL L. HILLMAN
United States District Judge

At Camden, New Jersey
Dated: January 28, 2009

24